**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NICHOLAS SURGEY,

                    *Plaintiff*,

         v.                                                    Civil Action No. 18-654 (TJK)

ENVIRONMENTAL PROTECTION
AGENCY,

                    *Defendant*.

<u>**MEMORANDUM OPINION AND ORDER**</u>

    Plaintiff Nicholas Surgey sued the Environmental Protection Agency under the Freedom

of Information Act, or FOIA.  He seeks documents related to a trip taken by the EPA's former

Administrator to attend the 2018 Rose Bowl college football game.  The parties have cross-moved

for summary judgment.  For the reasons explained below, the Court will deny both parties' motions

without prejudice as to (1) the adequacy of the EPA's search, (2) the withholding of the former

Administrator's Protective Service Detail's logistical coordination and travel details, and (3) seg-

regability.  But the Court will grant the EPA's motion, and deny Surgey's, in all other respects,

including the applicability of FOIA's Exemption 6 to additional details of the former Administra-

tor's family vacation.

## I.    Background

    At the end of 2017, then-Administrator of the EPA Scott Pruitt left with his family for a

holiday vacation.  ECF No. 13-2 ¶ 7.  The Pruitt family attended the 2018 Rose Bowl college

football game in Pasadena, California, on New Year's Day, where the University of Oklahoma

Sooners lost to the University of Georgia Bulldogs.  ECF No. 13-1 ¶ 9.  They then spent the next

couple of days at Disneyland in Anaheim, California, ECF No. 16-1 ¶ 4, appearing to stay at least one night at the Disneyland Hotel, *see* ECF No. 21-5 at 55–56.

Plaintiff Nicholas Surgey is an investigative journalist and co-director of an organization that researches corporate influence over public policy.  In January 2018, Surgey submitted a FOIA request to the EPA, seeking "[r]ecords associated with EPA Administrator Scott Pruitt's travel to and attendance at the 2018 Rose Bowl college football game, which took place on January 1, 2018 at the Rose Bowl stadium in Pasadena, California."  ECF No. 13-4 at 3.  The request specified that the "[r]ecords should include but should not be limited to any emails, notes, or expense reports that describe the trip to Pasadena, the Rose Bowl game, and any associated meetings or events that took place on the same trip."  *Id.*  Surgey further instructed that the response should include "[d]etails of who paid for travel, Rose Bowl tickets, and any other associated costs incurred on this trip."  *Id.*  Finally, according to the request, the "records should concern travel by Scott Pruitt, as well as any other EPA staff (including security staff) that traveled to Pasadena as part of the same trip or attended the game with the Administrator."  *Id.*  Surgey received no response to his request and so he sued in March 2018.

A couple of months after Surgery sued, the EPA searched for responsive records.  The EPA searched Microsoft Outlook accounts, its travel system, as well as the non-Microsoft Outlook records of the former Administrator and other custodians.  ECF No. 13-2 ¶¶ 8–18.  Because Surgey's request spoke only of the former Administrator's trip to the Rose Bowl game, the agency focused its search on the same, using the terms "football," "rose bowl," "Pasadena," "Huntington Beach," "sooner*," or "bulldog*."[1]  *Id.* ¶ 9.

---

[1] The asterisk captures any pluralization of the term preceding it.  So "sooner*" would also capture "sooners."  ECF No. 13-2 ¶ 9 n.2.

As a result of its search, the EPA produced nearly 400 pages of responsive records.[2]  *Id.*

¶¶ 19–21.  The EPA first withheld about 99 records in part and 54 records in full.  *Id.* ¶ 21.  The

records withheld in full included the contact information of individual law enforcement officers, a

Joint Special Threat Assessment for the 2018 Rose Bowl game, Protective Service Detail weekly

scheduling documents, and Protective Service Detail travel itineraries or vouchers.  *Id.*

After its production, the EPA moved for summary judgment.  *See* ECF No. 13.  Surgey

then cross-moved for summary judgment.  *See* ECF No. 16.  A couple of weeks after Surgey filed

his cross-motion, the EPA conducted another review of the records at issue.  According to the

EPA, it "reconsidered its exemption analysis and removed redactions from some previously pro-

duced records."  ECF No. 21 at 2.  The EPA then made a supplemental production of records to

Surgey, which "included previously redacted information concerning the former Administrator's

schedule during his personal vacation."  *Id.*  According to Surgey though, the EPA's original search

was not adequate, and the supplemental production still includes "disputed redactions that EPA

cannot justify."  ECF No. 23 at 1.

## II.     Legal Standard

"Congress enacted the FOIA in order to 'pierce the veil of administrative secrecy and to

open agency action to the light of public scrutiny.'"  *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C.

Cir. 2007) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)) (internal quotation

marks omitted).  "FOIA 'mandates that an agency disclose records on request, unless they fall

---

[2] The EPA's first production included 300 pages responsive records.  But soon after the agency released the records, it realized it had accidentally disclosed the identity of a Special Agent working on for the EPA's Protective Service Detail.  The EPA provided an updated production, and Surgey deleted the former on the EPA's request.  The EPA went on to produce an additional 90 pages of records.

within one of nine exemptions.'" *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.* ("*EPIC*"), 777 F.3d 518, 522 (D.C. Cir. 2015) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)).

The "majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Representative.*, 641 F.3d 521, 527 (D.C. Cir. 2011). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.–Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). "The evidence presented must show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA." *MacLeod v. Dep't of Homeland Sec.*, No. 15-cv-1792 (KBJ), 2017 WL 4220398, at *6 (D.D.C. Sept. 21, 2017) (citing 5 U.S.C. § 552(a)(4)(B)).

## III.    Analysis

### A.    Sufficiency of EPA's Search

The parties first disagree over the adequacy of the EPA's search. The D.C. Circuit "applies a reasonableness standard to determine whether an agency performed an adequate search." *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015). This inquiry focuses not on "the fruits of the [agency's] search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). "To prevail on summary judgment," the agency need only "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested"—a showing that is met "by submitting a reasonably detailed affidavit, setting forth the

search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (cleaned up) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

The EPA has largely carried its burden.  As explained above, the EPA searched several areas likely to have records responsive to Surgey's request.  It searched the Microsoft Outlook accounts of the Administrator, the Administrator's Director of Scheduling and Advance, the Deputy White House Liaison and Personal Aide to the Administrator, the Senior Advisor to the Administrator for Public Affairs, and individuals who were part of or supported the Administrator's Protective Service Detail.  ECF No. 13-2 ¶ 8.  This search was for records dated from December 1, 2017, through January 8, 2018, that included the terms "football," "rose bowl," "Pasadena," "Huntington Beach," "sooner*," or "bulldog*."  *Id.* ¶ 8–9.  The EPA explained in an affidavit that these "search terms would locate responsive records" because "football," "rose bowl," "sooner*," or "bulldog*" would capture records about the Rose Bowl trip, as the University of Oklahoma Sooners played the University of Georgia Bulldogs in the 2018 Rose Bowl game.  *Id.* ¶ 10.  Meanwhile, "Pasadena" and "Huntington Beach" would "capture records that refer to the location of the trip but that do not specifically mention the football game."[3]  *Id.*  The EPA also searched its travel system for travel for former Administrator Pruitt from December 14, 2017, through January 14, 2018, and for records from the same time frame for any travel to California by members of the Protective Service Detail.  *Id.* ¶¶ 13, 15.  And the agency further searched former Administrator Pruitt's, and other custodians', non-Microsoft Outlook records, looking through "local or shared

---

[3] One Outlook account search did not include the term "sooner*" because the email address of the account was "sooners7@epa.gov," so "sooner*" would have collected almost every email in the inbox.  *Id.* ¶ 11.

drives, SharePoint sites, OneDrive, mobile devices, text messages, external drives, and hard copy files." *Id*. ¶¶ 16–17.  The individuals sifting through these non-Microsoft Outlook records were given the language of Surgey's request to aid in their search.  *Id.* ¶ 17.  Overall, the agency's search efforts yielded nearly 400 pages of responsive records.  *Id.* ¶¶ 20–21.

The EPA was not required, as Surgery argues, to expand its search to capture "all records concerning all parts of" the Pruitt family's vacation in California regardless of their relation to the Rose Bowl game.  ECF No. 16 at 6; *see* ECF No. 23 at 2–4.  "In complying with a FOIA request, an agency is not required to search for records which are beyond the scope of the original request." *Negley v. FBI*, 766 F. Supp. 2d 190, 195 (D.D.C. 2011).  And the EPA properly construed Surgey's request as limited to records related to the former Administrator's trip to and attendance at the Rose Bowl game.  Surgey sought:

> Records associated with EPA Administrator Scott Pruitt's travel to and attendance at the 2018 Rose Bowl college football game, which took place on January 1, 2018 at the Rose Bowl stadium in Pasadena, California.  Records should include but should not be limited to any emails, notes, or expense reports that describe the trip to Pasadena, the Rose Bowl game, and any associated meetings or events that took place on the same trip.  Details of who paid for travel, Rose Bowl tickets, and any other associated costs incurred on this trip, should be provided in the response.  These records should concern travel by Scott Pruitt, as well as any other EPA staff (including security staff) that traveled to Pasadena as part of the same trip or attended the game with the Administrator.

ECF No. 13-4 at 3.  The former Administrator and his family may have taken other tourist trips during their vacation, but this language "is very specific as to the time, place, and event for which information is sought."  ECF No. 21 at 4.  Indeed, the ask is only for records "associated with" former Administrator Pruitt's "travel to and attendance at" the Rose Bowl game.  ECF No. 13-4 at 3.  The repeated use of the word "associated" in the explanatory sentences that follow—instructing the EPA to include records about "any *associated* meetings or events" and "any other *associ-*

*ated* costs"—continues to tie the information requested to the former Administrator's trip to Pasadena to attend the Rose Bowl game. *Id.* (emphasis added).

The requirement that agencies "construe a FOIA request liberally" does not change the appropriateness of the EPA's interpretation. *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). An agency "is not obligated to rewrite the request to ask for more than the requester did." *Am. Oversight v. United States Dep't of Just.*, 401 F. Supp. 3d 16, 34 (D.D.C. 2019) (quoting *Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 517 (D.D.C. 2015)), *appeal dismissed*, No. 19-5257, 2021 WL 1158198 (D.C. Cir. Jan. 27, 2021). The request must be "reasonably susceptible to the broader reading." *Stein v. U.S. Sec. & Exch. Comm'n*, 266 F. Supp. 3d 326, 336 (D.D.C. 2017) (quoting *LaCedra v. Exec. Office for U.S. Att'ys.*, 317 F.3d 345, 348 (D.C. Cir. 2003) . And Surgey's request is not. Reading his request as one for records unrelated to the 2018 Rose Bowl game would turn a blind eye to the very first sentence, which spells out the ask as one for records "*associated with*" former Administrator Pruitt's "travel to and attendance at" the game. ECF No. 13-4 at 3 (emphasis added).

True, as Surgey points out, the request goes on to describe the records sought as ones "that describe the trip to Pasadena, the Rose Bowl game, and any associated meetings or events that took place on the same trip." ECF No. 23 at 2. But including "any associated meetings or events that took place on the same trip," does not suddenly sweep in all documents related to the former Administrator's vacation as a whole. *Id.* Such an interpretation ignores the description of the relevant "trip" as the one to Pasadena and the Rose Bowl game. ECF No. 13-4 at 3. Even if "trip" referred to the former Administrator's California vacation more broadly, under Surgey's interpretation, the word "associated" would do no work at all; the request might as well describe the responsive records as those that concern "any [] meetings or events that took place on the same trip."

*Id.* That Surgey drops the word "associated" when making his arguments makes clear the word's obsolescence under his reading. *See* ECF No. 16 at 6; *see also Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 101 (D.D.C. 2013) (rejecting reading of FOIA request that "renders portions of the request mere surplusage").[4]

Put simply, Surgey's "request was not broadly drawn; it made a specific inquiry about specific actions. The agency was bound to read it as drafted, not as either agency officials or [Surgey] might wish it was drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984).[5]

The Court also agrees with the EPA that it did not need to search its Ethics Office for responsive records. "[A]n agency's search obligations are dictated by whether the scope of the search is 'reasonably calculated to uncover all relevant documents'—a standard that an agency satisfied by searching 'all files likely to contain responsive materials (if such records exist).'" *Mobley v. CIA*, 924 F. Supp. 2d 24, 44 (D.D.C. 2013) (internal citation omitted). "[I]f an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999). But "an agency is not required to demonstrate that each and every responsive

---

[4] For similar reasons, the sentence conveying the relevance of "[d]etails of who paid for travel, Rose Bowl tickets, and any other associated costs incurred on this trip" does not change the scope of the request. ECF No. 23 at 3. One again, the word "associated" cabins what costs are responsive to Surgey's request—otherwise, that word is meaningless.

[5] An agency's "duty to follow[] up on any known leads arising in the course of its search for documents" does not help Surgey. ECF No. 23 at 4 (internal quotation marks omitted). That requirement concerns where an agency looks for responsive documents. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (agencies must "follow through on obvious leads to discover *requested* documents") (emphasis added); *see also Coleman v. Drug Enf't Admin.*, 134 F. Supp. 3d 294, 301 (D.D.C. 2015) ("[A]n agency cannot ignore 'clear leads that may indicate other offices that should have been searched.'" (quoting *Rollins v. Dep't of State*, 70 F. Supp. 3d 546, 550 (D.D.C. 2014))). It does not change what records are responsive in the first place.

document was actually located or that no other relevant documents exist." *Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 516 (D.D.C. 2015).

Here, there is no reason to think that the Ethics Office would have any responsive documents. The EPA has explained that "[t]he Administrator's trip to the 2018 Rose Bowl was a personal family vacation." ECF No. 13-2 ¶ 7; ECF No. 21-1 ¶ 6 (same). And since Surgey filed his cross-motion for summary judgment, the agency has clarified that the "EPA's Ethics Office of the General Counsel was not consulted regarding [that] . . . trip to the Rose Bowl or [the Administrator's] travel to California." ECF No. 21-1 ¶ 7. "Because the Ethics Office was not consulted regarding the trip to California," the EPA decided that "there was no reason to search that office for records." *Id.*[6]

Given these "reasonably detailed, nonconclusory" statements "submitted in good faith," Surgey "must provide specific evidence suggesting that" the EPA was wrong not to search the Ethics Office's records. *Stanko v. Fed. Bureau of Prisons*, 842 F. Supp. 2d 132, 137 (D.D.C. 2012) (citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). He has not. Surgey argues that, considering "the clearly non-negligible value of a week-long trip to California[,] . . . payment for even a portion of the trip by an outside source *would* almost certainly result in communications between Mr. Pruitt or his staff and EPA Ethics Office." ECF No. 16 at 8 (emphasis added). And "*[i]f* Mr. Pruitt reported a gift to the [Ethics] [O]ffice after he received it, that communication . . . *would* be directly responsive to Mr. Surgey's request." ECF No. 23 at 6 (emphases added). But

---

[6] The EPA declarant goes on to say that "[w]hile it was reasonable to omit the Ethics Office from [the agency's] search," she was able to "confirm[] with the Ethics Office that they do not have records responsive to [Surgey's] request." ECF No. 21-1 ¶ 7. Because the Court agrees with the EPA that a search was unnecessary, it does not address the sufficiency of this description of any Ethics Office search.

ifs, woulds, and other hypotheticals just don't cut it.  A detailed agency declaration "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Knowles v. U.S. Dep't of State*, 308 F. Supp. 3d 1, 7 (D.D.C. 2018) (quoting *Mobley*, 806 F.3d at 581).[7]

At bottom, the EPA has shown "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Mobley*, 806 F.3d at 580 (quoting *Oglesby*, 920 F.2d at 68).

There is, however, one problem: the EPA "has failed to invoke the magic words concerning the adequacy of the search—namely, the assertion that [the EPA] searched <u>all</u> locations likely to contain responsive documents."  *Huntington v. U.S. Dep't of Commerce*, 234 F. Supp. 3d 94, 103 (D.D.C. 2017) (internal quotation marks omitted).  "Where the government has not made such an attestation, courts have typically found that an issue of material fact exists as to the adequacy of its search."  *Elkins v. Fed. Aviation Admin.*, 103 F. Supp. 3d 122, 131 (D.D.C.) (citing cases), *on reconsideration on other grounds*, 134 F. Supp. 3d 1 (D.D.C. 2015); *see also, e.g.*, *New Orleans Workers' Ctr. for Racial Just. v. U.S. Immigr. & Customs Enf't*, 373 F. Supp. 3d 16, 37 (D.D.C. 2019).  The Court will therefore reserve judgment on the adequacy of the EPA's search.  Assuming the agency can provide a supplemental declaration showing that it searched all locations likely to contain responsive material, the Court will grant it summary judgment on the adequacy of its search.

---

[7] Surgey also first argued that the EPA "did not adequately search for staff travel vouchers."  ECF No. 16 at 9.  But after the EPA explained that no non-Protective Service Detail staff "accompanied the Administrator on his family vacation" to the football game, ECF No. 21 at 6, Surgey represented that he no longer challenged the adequacy of the EPA's search on that basis, ECF No. 23 at 6 n.3.

### B.      Exemptions

The parties also disagree over the EPA's application of FOIA exemptions to withhold cer-

tain information.  When an agency withholds responsive records under any of FOIA's exemptions,

"[t]he burden is on the agency to justify withholding the requested documents."  *EPIC*, 777 F.3d

at 522.  The agency will be granted summary judgment "on the basis of [its] affidavits when the

affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate

that the information withheld logically falls within the claimed exemption, and are not contro-

verted by either contrary evidence in the record nor by evidence of agency bad faith."  *Larson v.*

*Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller*, 730 F.2d at 776 ).  The agency

cannot rely on "conclusory and generalized allegations of exemptions."  *Morley*, 508 F.3d at 1115

(cleaned up).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient

if it appears logical or plausible."  *Larson*, 565 F.3d at 862 (internal quotation marks omitted).

With the EPA's supplemental production, the parties' dispute over withholdings boils

down to two categories of information: (1) additional details about how the former Administrator

and his family spent their family vacation, and (2) details about the Protective Service Detail's

travel and logistical coordination.[8]  In the end, the Court agrees that the EPA properly applied

---

[8] Surgey does not seek these documents withheld in full:  the local law enforcement vCard files, ECF No. 16 at 9 n.2; the Protective Service Detail travel documents, ECF No. 16 at 16 n.5; and the Joint Special Event Threat Assessment, ECF No. 16 at 16.  As for redacted information, Surgey does not seek the names and information associated with law enforcement personnel, ECF No. 16 at 9 n.2, the information redacted from the Protective Service Detail weekly schedules, ECF No. 23 at 11, the name and address of a restaurant at which the former Administrator dined, ECF No. 23 at 7 n.4, or the address of a private residence the former Administrator visited, *id*.  Thus, sum-mary judgment will be granted in favor of the EPA as to these withholdings.  *See Peter S. Herrick's Customs & Int'l Trade Newsl.v. U.S. Customs & Border Prot.*, No. 04-cv-377 (JDB), 2006 WL 1826185, at *4 (D.D.C. June 30, 2006) (granting summary judgment for agency on information plaintiff did not seek).

Exemption 6 to withhold certain information about how the former Administrator and his family spent their vacation.  But this Court does not have enough information to decide whether the agency properly withheld the travel and logistical coordination information.

### 1.    Pruitt Family Vacation Details

The EPA redacted certain "[i]nformation concerning where Administrator Pruitt and his family, dined, stayed, or spent time on their personal family vacation" under Exemption 6 of FOIA. ECF No. 21-3 at 3.  Exemption 6 provides that agencies may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Courts follow a two-step process when considering withholdings or redactions under Exemption 6.  First, they "determine whether the [records] are personnel, medical, or 'similar' files covered by Exemption 6." *Multi AG Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(b)(6)).  Second, if the records are medical, personnel, or similar files, courts "balance the public interest in disclosure against the interest Congress intended [Exemption 6] to protect." *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (quoting *Dep't of Justice v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989)).  This test requires courts to determine whether disclosure "would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).  If the interest is substantial, then they "weigh that interest against the public interest in the release of the records." *Id.* (internal quotation marks omitted).

Here, the parties agree that details about how the former Administrator and his family spent their vacation is "personnel, medical, or similar" in nature.  5 U.S.C. § 552(b)(6).  "The threshold is fairly minimal, such that all information which applies to a particular individual is covered by

Exemption 6, regardless of the type of file in which it is contained." *Concepcion v. FBI*, 606 F. Supp. 2d 14, 35 (D.D.C.2009) (citations and internal quotation marks omitted).  And the EPA has described this withheld information as being "associated with [Administrator Pruitt and his family] personally."  ECF No. 21-3 at 3.

The next question is whether the former Administrator and his family have a substantial privacy interest in the withheld details about how they spent their vacation.  They do.  As the D.C. Circuit has noted, "our standard at this stage is not very demanding, so [courts] are willing to engage in the balancing inquiry by concluding that disclosure of the information would constitute a 'more than minimal invasion[] of personal privacy.'"  *Multi AG Media*, 515 F.3d at 1224 (quoting *Norton*, 309 F.3d at 35).  Revealing these details to the world be just that.  The information would "allow for an inference to be drawn about the financial situation of" the Pruitt family.  *Id.* at 1230.  Also, "[r]elease could expose the family to unwarranted media attention and harassment."  ECF No. 21-3 at 4; *see Rollins v. U.S. Dep't of State*, 70 F. Supp. 3d 546, 554 (D.D.C. 2014).  And that threat is not "speculative."  *Rollins*, 70 F. Supp. 3d at 554.  Surgey himself points to the media attention the Pruitt family already received over their Rose Bowl trip.  ECF No. 16 at 11.[9]

Surgey's argument in response is that former Administrator "Pruitt has only a *de minimis* privacy interest in disclosure of" "visits to widely attended events or attractions"—referring to the former Administrator's visit to the Rose Bowl, a nationally broadcast football game, and Disney-land, a crowded theme park.  ECF No. 16 at 11–12.  But that argument does not get Surgey very

---

[9] These facts distinguish this case from the Southern District of Georgia case Surgey cites.  In *Sikes v. United States*, the district court decided that the Government had not established more than a *de minimis* invasion of privacy from disclosing the redacted information in part because "the consequences likely to ensue from disclosure [we]re . . . de minimis," and the Government's "contention that third parties may intrude upon individuals' privacy . . . [wa]s speculative."  987 F. Supp. 2d 1355, 1368–69 (S.D. Ga. 2013).

far.  The EPA has not withheld under Exemption 6 that the former Administrator visited the Rose

Bowl game.  *See, e.g.*, ECF No. 21-4 at 2–4 (weekly schedule noting Administrator's attendance

at Rose Bowl); ECF No. 21-5 at 4 ("Pruitts will attend Rose Bowl").  And while information about

the former Administrator and his family's trip to Disneyland is outside the scope of Surgey's re-

quest, *see supra*, the EPA has disclosed that visit in otherwise responsive documents.  *See, e.g.*, *id.*

("Pruitts will spend the entire day at Disneyland.").  Surgey suggests that the family *could* have

visited other "popular attractions," and the EPA *could* still be withholding that information since

the EPA has not "affirmatively state[d] that all such information has been disclosed."  ECF No. 23

at 7.  But he points to nothing in what the EPA disclosed to him that suggests that.  *See, e.g.*, ECF

No. 21-5 at 53, 55.  Besides, even if the former Administrator's family's vacation did include

tourist activity that was in a sense public, that "does not mean that" the family "has no interest in

limiting disclosure or dissemination of the information."  *Reps. Comm. For Freedom of Press*, 489

U.S. at 770 (internal quotation marks omitted).  In this Circuit, "a privacy interest may be impli-

cated by 'practically obscure' information"—*i.e.*, information that is "now difficult or impossible

to find."  *McGehee v. U.S. Dep't of Justice*, 800 F. Supp. 2d 220, 234 n.6 (D.D.C. 2011).  Here,

that would include the details about where former Administrator Pruitt and his family spent every

minute of their vacation in January 2018.

The Court thus moves to balancing the former Administrator and his family's privacy in-

terest against the public's interest in disclosure.  Surgey identifies the "public interest" sought to

be advanced as an interest in "how a member of the President's cabinet made use of government

resources for a trip."  ECF No. 16 at 13.  Generally speaking, this Court agrees that "there is a

substantial public interest" in that information.  *Id.*  As Surgey points out, "[d]isclosure of govern-

ment expenditures is a quintessential example of revealing 'what the government is up to,'" which

14

is the entire point of FOIA.  *Id.* (quoting *Multi AG Media*, 515 F.3d at 1227).  The public's interest is even more prevalent here, where Surgery points to at least some evidence that former Administrator Pruitt or those around him misused agency resources before.  *See id.* at 14–15 (citing report from EPA's Office of Inspector General that found $1.6 million increase in security costs occurred "without documented justification"); *id.* at 15 (detailing "report concluding EPA violated federal law by paying over $43,000 to install a soundproof privacy booth for Mr. Pruitt").

Courts, however, must "focus not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003).  Given the "substantive information concerning the Administrator's schedule" already released in the EPA's supplemental production, ECF No. 21 at 7, it is hard to see how releasing further details about how the former Administrator spent his personal family vacation "is likely to advance" the identified public interest, *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (describing Exemption 7 public interest balancing test); *see also Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (Exemption 7 test "is applicable in the case of Exemption 6").  Surgey already has the family's itinerary dated the day the trip began.  ECF No. 21-5 at 55–56 (schedule dated December 31, 2017, for a trip starting December 31, 2017).  The information disclosed includes key locations where the family would be present on each day—in particular, the Rose Bowl or Disneyland—and the hotels at which they were staying.  *Id.*  This should give Surgey all he needs to determine "how agency resources were expended to cover travel expenses for the [Private Security Detail] on Mr. Pruitt's trip to California."  ECF No. 23 at 10.  Any added value provided by knowing further details of where the former Administrator's family otherwise "dined, stayed, or spent time" would be marginal at best.  ECF No. 23-3 at 6–8.

Considering the minimal value of releasing the withheld information, this Court agrees with the EPA that the privacy interest of the former Administrator and his family must prevail. The EPA thus properly withheld under Exemption 6 additional details about how former Administrator Pruitt and his family spent their family vacation. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) (agency properly withheld information under Exemption 6 where the identified "public interest ha[d] been adequately served by" other disclosures).[10]

### 2.   Travel and Logistical Coordination Details

The EPA redacted information about the Protective Service Detail's travel and logistical coordination under several exemptions. The agency applied Exemptions 7(E) and 7(F) to withhold both sets of information—logistical and travel. ECF No. 21-3 at 4–5. For the travel details specifically, the EPA invoked Exemptions 6 and 7(C) as well. *Id.* at 4. Because the Court need not address the propriety of withholding the travel details under Exemptions 6 and 7(C) if the same details were properly withheld under Exemptions 7(E) and 7(F), the Court will start with the EPA's application of the latter.

Exemption 7 protects from disclosure certain "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Exemption 7(E) covers those that "would disclose techniques and procedures for law enforcement investigations or prosecutions[] or would disclose

---

[10] The still partially redacted emails Surgey points to do not change this conclusion. *See* ECF No. 23 at 9 (discussing ECF No. 25-5 31, 41). Surgey argues that the emails show the "EPA's continued overreliance on exemption 6." *Id.* The Court disagrees. The December 26 email discusses an earlier iteration of the family's vacation itinerary. ECF No 25-5 at 31. And the December 27 emails are about hotels near the Rose Bowl at which the former Administrator and his family considered staying. ECF No. 25-5 at 41. All concern "where Administrator Pruitt and his family dined, stayed, or spent time on their personal vacation," ECF No. 21-3 at 3, or at least where they considered staying, which the family has a substantial interest in keeping private. Meanwhile, Surgey does not explain the public interest in disclosure of an older version of the family's itinerary or information about hotels at which the family merely considered staying.

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *Id.* 552(b)(7)(E).  Exemption 7(F) allows the withholding of documents compiled for law enforcement purposes if disclosure "could reasonably be expected to endanger the life or physical safety of any individual."  *Id.* § 552(b)(7)(F).

The parties agree that the Protective Service Detail's logistical coordination information and travel details both constitute "information compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  The issue is whether releasing those records would risk circumvention of the law or create a reasonable expectation of endangerment.  The EPA argues that it would because the logistical coordination information "includes information on the number of Special Agents protecting the Administrator at a given time, positioning of Special Agents in different circumstances, and strategic discussion of how to approach protection challenges."  ECF No. 21-3 at 4.  And it says that the travel details "would disclose how EPA allocates [Protective Service Detail] staffing to protect the Administrator on specific trips while he is traveling.  *Id.*  Surgey disagrees that information about security staffing "would pose a danger to anyone or risk circumvention of the law," ECF No. 16 at 20,[11] and he argues that the EPA is otherwise applying Exemptions 7(E) and 7(F) too broadly, ECF No. 16 at 20–22; ECF No. 23 at 11–13.

To the extent that the information withheld concerns security staffing, this Court agrees with the EPA that the information would be properly withheld under Exemption 7(E) or 7(F).  The EPA need only show "that it reasonably estimated that sensitive information could be misused for nefarious ends."  *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n,*

---

[11] At least, Surgey originally held this position.  It is unclear whether he maintains it.  Surgey did not reiterate this argument in his post-supplemental production filing, repeating instead that he "does not seek" information on "the number of Special Agents protecting the Administrator at a given time."  ECF No. 23 at 13; *see also* ECF No. 16 at 21.

*U.S.-Mexico*, 740 F.3d 195, 206 (D.C. Cir. 2014) (Exemption 7(F)); *see also Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (similar for Exemption 7(E)).  And it has done just that.  The agency has explained that the redacted staffing-related information would allow the public to "know the number of [Protective Service Detail] agents traveling with the Administrator during specific trips (some of whom may be undercover agents)."  ECF No. 21-3 at 4.  Even if there is "no final, approved standard operating procedure[]" for Protective Service Detail staffing, ECF No. 16 at 18–19, such information still "would reveal an aspect of a resource allocation scheme," *N.Y. Times Co. v. U.S. Secret Serv.*, No. 17-cv-1885 (PAC), 2018 WL 722420, at *8 (S.D.N.Y. Feb. 5, 2018).  Indeed, that information, "when extrapolated, enable[s] a person to predict the number of agents assigned [and] . . . the protective means and methods."  *Id.*  It is reasonable for the EPA to expect someone to use that information "to counteract [the Protective Service Detail's] security measures" and "circumvent the law," rendering the Protective Service Detail ineffective during a future attack.  ECF No. 21-3 at 4–5.  That the risk here may be less certain than the risk in *New York Times Company* is of no moment, because a certain risk is not required, only a reasonably expected risk.  *See also Mayer Brown*, 562 F.3d at 1193 (Exemption 7(E) looks only "for the chance of a reasonably expected risk"); *Pub. Emps. for Env't Resp.*, 740 F.3d at 205 (under Exemption 7(F), "[d]isclosure need not *definitely* endanger life or physical safety; a reasonable expectation of endangerment suffices").

All that said, the Court ultimately agrees with Surgey that the record suggests that at times, the EPA may be applying Exemptions 7(E) and 7(F) to neither staffing nor logistical coordination information, like where the Protective Service Detail went or stayed during the family's trip.  *See* ECF No. 23 at 11–12 (citing ECF No. 21-5 at 39).  And the Court is inclined to agree with Surgey that such information would not create a reasonable risk of circumvention or endangerment,

thereby preventing the application of Exemptions 7(E) or 7(F).  But on this record, the Court cannot say for sure that the agency is applying Exemption 7(E) or 7(F) to such information.  The disclosed portions of the records provide helpful context, but still this Court cannot tell exactly what information is being withheld, so that it may assess the applicability of these exemptions.  The Court will therefore reserve judgment on the EPA's decision to withhold the Protective Service Detail's logistical coordination and travel details under Exemptions 7(E) and 7(F) until the EPA elaborates on the information being withheld.  If "an in-depth description . . . would risk disclosure of" the protected information, "the government may supplement its explanations with non-public affidavits and other documents for *in camera* review by the court." *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 235 (D.D.C. 2013).

As for the EPA's application of Exemptions 6 and 7(C) to the Protective Service Detail's travel information, the Court again finds itself unable to award judgment to either party.  Like Exemption 6, Exemption 7(C) protects privacy interests.  *See* 5 U.S.C. § 552(b)(7)(C).  "Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material."  *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 31 (D.D.C. 2018) (citation and internal quotation marks omitted).  But under both exemptions, the Court's "task . . . is to balance the privacy interest against the public interest in disclosure," *id.* (cleaned up)—a task this Court cannot complete based on the briefing and record before it.  On one hand, the Court is not satisfied that the EPA has sufficiently identified a "personal privacy" interest at stake.  5 U.S.C. § 552(b)(7)(C).  The agency says that revealing travel details "like airline names, airport codes, and confirmation numbers would reveal information about travel operations" ECF No. 13 at 11, yet does not explain how those details would reveal anything of an "intimate personal nature," which is the type of "disclosure[] with which the statute is concerned,"

*Doe, 1 v. Federal Election Comm'n*, 920 F.3d 866, 873 (D.C. Cir. 2019) (cleaned up).  Meanwhile, Surgey never tries to identify a public interest in disclosure—in fact, he makes no substantive argument at all because he (wrongfully) believes that the EPA waived this Exemptions 6 and 7(C) argument entirely.  *See* ECF No. 16 at 22–23; ECF No. 23 at 10–11.  Given the omissions on both sides, the Court will reserve judgment on this issue as well and deny both parties' motions for summary judgment accordingly.  The Court will allow the parties to "provide more information" in "revised motion[s] and memorandum[s]."  *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 143 (D.D.C. 2014).

### C.     Segregability

Finally, under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt," 5 U.S.C. § 552(b), "unless the exempt portions are 'inextricably intertwined with exempt portions,'" *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).  "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability." *Id.* (quoting *Mead Data*, 566 F.2d at 261).  "To make this showing, the agency typically provides a *Vaughn* index and 'a declaration attesting that the agency released all segregable material.'"  *Am. Ctr. for Law & Justice v. U.S. Dep't of State*, 330 F. Supp. 3d 293, 306 (D.D.C. 2018) (quoting *Judicial Watch, Inc. v. Dep't of Justice*, 20 F. Supp. 3d 260, 277 (D.D.C. 2014)).  Once it has done so, "the agency is 'entitled to a presumption that it complied with the obligation to disclose reasonably segregable material.'"  *Id.* (cleaned up) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)).

It appears that the EPA qualifies for the presumption.  It has provided a Vaughn index, and it declared that "the Agency has segregated releasable information when possible."  ECF No. 21-1 ¶ 4.  Further, the EPA "re-reviewed the documents and narrowed its redactions and withholdings."  *Marino v. Drug Enf't Admin.*, No. 06-cv-1255 (TJK), 2021 WL 3793053, at *6 (D.D.C. Aug. 26, 2021).

Surgey does not dispute any of this.  In fact, for most of the EPA's withholdings, Surgey does not contest that the agency met its burden.  His only segregability concern is with the agency's "withholding [of] several blocks of texts based on a mix of exemptions."  ECF No. 23 at 13.  Surgey claims that "[b]ecause EPA continues to withhold information improperly under these exemptions, the Court should order EPA to conduct additional segregability reviews of these passages for improperly withheld information."  *Id.*  This argument helps Surgey—up to a point.  If the Court ultimately agrees that the EPA improperly withheld information under Exemptions 7(E) and 7(F), or Exemptions 6 and 7(C), then it will likely agree that the EPA should do another segregability review of those passages.  *See Sussman*, 494 F.3d at 1117 ("[T]o the extent the district court orders additional disclosures on remand, new segregability findings will be required.").  The Court will therefore wait to address the segregability of the "combined passages," ECF No. 21-3 at 5, 7–9, but otherwise find that the EPA met its segregability burden as to all other withholdings.  *See Rivera Rodriguez v. U.S. Dep't of Justice Exec. Office of U.S. Attorney*, No. 19-cv-02510 (APM), 2020 WL 2079442, at *2 n.1 (D.D.C. Apr. 30, 2020) ("[U]ntil the court determines whether documents were properly withheld, it need not address Defendant's segregability analysis.").

IV.     **Conclusion and Order**

For all the above reasons, the parties' motions for summary judgment, ECF Nos. 13 & 16, to the extent they address the adequacy of the EPA's search, the withholding of the Protective Service Detail's logistical coordination and travel details, and segregability, are **DENIED WITH-OUT PREJUDICE**.  As for the remaining issues, including applicability of Exemption 6 to additional details of the former Administrator Pruitt's family vacation, the EPA's motion is **GRANTED**, and Surgey's motion is **DENIED**.  It is **FURTHER ORDERED** that the parties shall file a joint status report, including, if appropriate, a schedule for further summary judgment briefing, by January 7, 2022.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: December 3, 2021